# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIE L. DAVIS,** | : | **Civil No. 3:13-CV-1711** |
| | : | |
| **Plaintiff** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **WARDEN J.E. THOMAS,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.    Procedural Background and Statement of Facts

The plaintiff in this action, Willie L. Davis, is an inmate in the custody of the Federal Bureau of Prisons.  Davis is currently housed at the United States Penitentiary at Lewisburg, which has been reconfigured in recent years as an institution-wide Special Management Unit designed to house inmates who have committed serious offenses, engaged in repeated misconduct at other institutions, or have otherwise exhibited a persistent unwillingness to conform to prison rules.

Davis is a frequent litigant in federal court, although a consistently unsuccessful one.[1]  Davis initiated this <u>Bivens</u>[2] action on June 21, 2013.  In his

---

[1] <u>Davis v. Thomas</u>, No. 3:13-CV-2776; <u>Davis v. Thomas</u>, No. 3:12-CV-1997; <u>Davis v. Thomas</u>, No. 3:13-CV-2181; <u>Davis v. Jordan</u>, 3:13-CV-1107;

complaint, Davis alleged that the Warden at USP-Lewisburg, J.E. Thomas, exhibited deliberate indifference to Davis's health and safety when he refused to install air conditioning units in Davis's cell block during a period in the summer of 2012 when Davis claimed the temperature in his prison cell exceeded 90 degrees.  Davis initially endeavored to bring a claim pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights, and also under 18 U.S.C. § 242, on the theory that Davis enjoys a private right of action under this criminal statute.

Defendant Thomas  moved to dismiss the claims against him at the outset of this litigation, arguing that Davis failed to articulate a constitutional violation, and because Davis has no private cause of action under the federal criminal statute he relies upon.  We recommended that the motion to dismiss be granted in part and denied in part.  (Doc. 30.)  In particular, although we regarded the question as extremely close, we recommended that Davis be permitted to proceed with his claim that he had been subjected to excessive heat in a poorly ventilated cell for an extended period of time during the summer of 2012.  Recognizing that such claims typically entail assessment of facts beyond the pleadings themselves we concluded

---

Davis v. Thomas, No. 3:13-CV-1710;  Davis v. Brown, No. 3:12-CV-1294.

[2] Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

that this claim by Davis could not be addressed on a motion to dismiss, but rather would have to await the completion of discovery and a more fully developed factual record.

The district court adopted this recommendation, (Doc. 32.), and this case proceeded to discovery.  At the close of discovery the defendant then filed a motion for summary judgement.  (Doc. 46.)  With respect to this motion, the pertinent facts are as follows:

Willie Davis is a prisoner housed in the Special Management Unit at the Lewisburg Penitentiary.  (Doc. 47, ¶7.)  By his own account, Davis may be a poor historian, whose recollection of past events may be distorted by the fact that he claims to hear voices and the voices tell him that everything written is inferior to the voices and those voices help him recall things.  (Id., ¶ 2.)  Davis suffers from asthma, and has a lengthy history of complaining about environmental conditions in his cell, having lodged hundreds of such complaints since 2008.  (Doc. 49, Exhibits.)

Davis' instant complaint is that the Lewisburg Penitentiary does not have air conditioning, and in the summer of 2012, the cells were very hot causing him to sweat.  (Doc. 47, ¶ 3.)  Davis claims that he filed a grievance about the heat, but that Warden Thomas failed to resolve his complaints.  (Id., ¶4.)  In fact, Davis' own pleadings reveal that Davis received a response from prison officials indicating that

the temperature and climate controls in the prison met American Correctional Association standards for air quality.  (Doc. 49, Exhibit C.)  Moreover, a review of Davis' history of environmental complaints during the summer of 2012 reveals that between May 22 and September 6, 2012, Davis complained about the heat in his cell on only three dates, May 22, July 27 and August 22, 2012.  (Doc. 49, Exhibit A.)  These complaints were, therefore, roughly equivalent to the number of complaints lodged by Davis in the summer of 2012 that prison "staff did not protect him from [a] mouse."  (Id.)

Davis presently contends that the heat was unconstitutional at the Lewisburg Penitentiary in the summer of when it reached the 80's and 90's. (Doc. 47, ¶7.)  With respect to this allegation, Davis acknowledged that he could not tell the temperature in a room just by being in that room, (Id., ¶12), and conceded that he has no evidence to demonstrate the days the temperature in the cell allegedly exceeded 90 degrees. (Id., ¶16.)  In the absence of any empirical proof Davis testified that he simply believes the temperature exceeded 90 degrees in his cell in the summer of 2012 for "several" days.  (Id., ¶13.)  Davis then provided a number of inconsistent answers when asked how many days "several" meant, claiming it was "probably" 60 days or "maybe" 60 days that the cell temperature exceeded 90 degrees, while conceding that

the temperature did not exceed 90 degrees in the cell for sixty days straight.  (Id.,

¶¶14-15.)

Davis also acknowledged that he had a number of means at his disposal to

mitigate the effects of summer heat.  For example, while Davis said the heat was

trapped in his cell with no ventilation, he later conceded that he had a window in his

cell that he could open.  (Id., ¶ 9.)  Davis also conceded that he had water in his cell

to drink and he could use it to run his wrists under and use a towel to collect water to

run all over his body.  (Id., ¶10.)  Further, Davis could also take a shower at least

three times a week during the summer of 2012.  (Id., ¶11.)

Beyond his complaints of heat-related discomfort, Davis provided only sparse

medical support for his claims.  Thus, while Davis suffered from asthma, the heat did

not get to the point where Davis had to seek medical attention for his asthma during

the summer of 2012.  (Id., ¶18 ("Still didn't get to the point where I had to seek

medical attention because of the heat.")  Instead, Davis claims the heat merely made

him use his inhaler more frequently.  (Id., ¶19.)  In addition, Davis claimed he has a

preexisting skin condition and he got rashes because of the heat.  Davis did not need

to seek medical attention for his rashes over the summer of 2012, but he claimed that

he used skin cream on his rashes.  This skin care regimen for Davis was not unique

to the summer months.  Davis also used the skin cream in the fall and wintertime, but

claimed that he needed it more often in the summer.  (<u>Id</u>., ¶¶20-22.)  Finally, Davis claimed he had emotional injuries due to the heat because he cried and "whined" about the heat in 2012.  However, Davis never sought mental counseling from the prison for heat related stress.  (<u>Id</u>., ¶23.)

It is upon these thin factual reeds that Davis alleged that his prison conditions constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.  The defendant has now moved for summary judgment on this Eighth Amendment claim, (Doc. 46.), and for the reasons set forth below, we recommend that summary judgment be entered in favor of the defendant in this case.

## II.   <u>Discussion</u>

### A.   <u>Rule 56–The Legal Standard</u>

The defendant has filed a motion for summary judgment in this case.  Rule 56(a) of the Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. Rule 56(a).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, No. 07-0493, 2010 U.S. Dist. LEXIS

31615, at *4 (M.D. Pa. Mar. 31, 2010).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence

supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. A party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and

an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### B.    Eighth Amendment–Governing Standards

Davis claims that in the summer months in 2012, the temperature exceeded 90 degrees in his cell and his cell block, and when he complained to the Warden about these conditions, he was told only that the ventilation within the cell met certain guidelines and, therefore, no other relief would be available. Davis claims that Warden Thomas's refusal to take steps to address this alleged problem of excessive heat by providing air conditioning amounted to cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.

Such claims must meet exacting legal standards.  The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials.  U.S. Const. amend. VIII; Farmer v. Brennan, 511 U.S. 825 (1994).  The Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  To allege a viable Eighth Amendment claim based on the conditions of confinement, an inmate must allege (1) a deprivation that is sufficiently serious and (2) that the defendant was deliberately indifferent to the deprivation.  Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir. 1992).  Moreover, conditions of confinement will violate the Eighth Amendment if the deprivation is sufficiently serious, which the Supreme Court has held means that the inmate has been denied "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834.  In addition, for an Eighth Amendment claim to lie, prison officials must have acted with deliberate indifference to the health or safety of the inmate, meaning that the prison officials acted with recklessness.  Id. at 834-35; Wilson v. Seiter, 501 U.S. 294, 303 (1991).  Thus, in order to find an Eighth Amendment violation with respect to conditions of confinement, the plaintiff ultimately must present evidence showing that the prison officials were "both aware

11

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. As Judge Rambo of this court has summarized:

> The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space and the need for some degree of ventilation and fresh air.

Mitchell v. Dodrill, 696 F. Supp. 2d 454, 466 (M.D. Pa. 2010) (citing Helling v. McKinney, 509 U.S. 25, 32 (1993)).

At the same time, it is clear that "the Constitution 'does not mandate comfortable prisons.' " Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Instead, in order to establish an Eighth Amendment claim, a plaintiff must show that he has been deprived of "the minimal civilized measure of life's necessities." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (quoting Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1991)). This includes showing that the conditions of confinement pose "a substantial risk of serious harm" to an inmate's health or safety. Farmer, 511 U.S. at 834. In considering such claims, courts emphasize the duration of the complainant's exposure to the allegedly unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. Rhodes, 452 U.S. at 362-63.

Furthermore,  "[w]hen an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'  Hudson, 503 U.S. at 9, 112 S.Ct. 995."  Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)).  Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, these claims also require proof of a both culpable state of mind, and objective proof of physical conditions of confinement which shock the conscience and depart from minimal civilized standards of life's necessities.

Applying these standards to prison heating and cooling complaints like those made by Davis a number of legal benchmarks have emerged:

> First, the Eighth Amendment applies to prisoner claims of inadequate cooling and ventilation.  Cooling and ventilation are distinct prison

conditions, and a prisoner may state an Eighth Amendment claim by alleging a deficiency as to either condition in isolation or both in combination.  Nonetheless, while distinct, cooling and ventilation are interrelated.  Under certain factual scenarios, cooling and ventilation may be parts of a "seamless web for Eighth Amendment purposes." Wilson, 501 U.S. at 305, 111 S.Ct. at 2327 . . . .

Second, the Eighth Amendment is concerned with both the "severity" and the "duration" of the prisoner's exposure to inadequate cooling and ventilation.  Cf. Dixon, 114 F.3d at 643 ("[I]t is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional.").  That is, "[a] condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time." Id.  Severity and duration do not necessarily form a perfect sliding scale, but our analysis should be informed by a consideration of both factors.

Third, a prisoner's mere discomfort, without more, does not offend the Eighth Amendment.    See Woods, 51 F.3d at 581 ("While the temperature in extended lockdown may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment."). . . . . In particular,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

> Farmer, 511 U.S. at 837, 114 S.Ct. at 1979 (emphasis added).

Chandler v. Crosby, 379 F.3d 1278, 1294-5 (11th Cir. 2004).

14

Judged against these benchmarks, courts have held on a number of occasions that the environmental conditions at the Lewisburg Penitentiary and the summertime conditions at this institution are not sufficiently severe, protracted, or harmful to constitute cruel and unusual punishment and rise to the level of a violation of the Eighth Amendment to the United States Constitution. See e.g., Kates v. USP Lewisburg Warden, 547 F. App'x 93 (2013); Mitchell v. Dodrill, 696 F.Supp. 2d. 454, 467 (M.D. Pa. 2010).

## C.   Qualified Immunity, Governing Standards

These cases rejecting summertime Eighth Amendment heat and ventilation claims at the Lewisburg Penitentiary, in turn, bring us to the third governing principle that we must consider in this case. Even if Davis had stated a colorable constitutional claim relating to the warmth of his cell during the summer of 2012,Davis would not be entitled to recover on this constitutional tort claim. In order to establish a civil rights claim Davis must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Davis is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v.

Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009).

This doctrine, known as qualified immunity, provides officials performing

discretionary functions not only defense to liability, but also "immunity from suit."

Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.)

(citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194,

201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d

199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have

committed a constitutional violation, the court must undertake a second, related

inquiry to assess whether the constitutional right in question was "clearly established"

16

at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  Id.  Where

a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In the specific factual context of Eighth Amendment claims involving excessive heat in inmate cells, courts have acknowledged that to sustain such a claim, and inmate must show conditions of such severity and duration that they deny prisoners "'the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000); Chandler v. Crosby, 379 F.3d 1278, 1294-5 (11th Cir. 2004).  In the past, when such claims have been considered at the Lewisburg Penitentiary courts have consistently rejected

these Eighth Amendment heat and ventilation claims finding that the defendant prison officials were entitled to summary judgment on these claims. See e.g., Kates v. USP Lewisburg Warden, 547 F. App'x 93 (2013); Mitchell v. Dodrill, 696 F.Supp2d. 454, 467 (M.D. Pa. 2010). Thus, in this case, Davis invites us to go where no court has gone before, and rule that the lack of summertime air conditioning at the Lewisburg Penitentiary offended the United States Constitution.

### D. Davis Has Failed to State an Eighth Amendment Claim and Warden Thomas is Entitled to Qualified Immunity

Applying these legal benchmarks, Davis's Eighth Amendment claims fail for two reasons.

First, Davis has not shown that the conditions at the Lewisburg Penitentiary were of such prolonged severity that they rose to the level of cruel and unusual punishment in violation of the Eighth Amendment. Fairly construed, Davis' complaints are those of an inmate who experienced periodic, seasonal discomfort due to the summertime heat in central Pennsylvania. In this regard, Davis' discomfort was apparently not unique. There is no indication that the conditions of his confinement differed materially from the conditions experienced by all other inmates at and staff at Lewisburg during the summer. Moreover, Davis' own description of those conditions is notable for its lack of detail, evidentiary support and either

apparent severity or intolerable duration. Thus, Davis acknowledged that on several occasions throughout the summer of 2012 he cell became very warm. He concedes, however, that he had access to ventilation and could mitigate the effects of the heat through showers and the use of cold running water in his cell. Furthermore, he described no enduring medical concerns arising from the summertime temperatures in central Pennsylvania. While he may have used his asthma inhaler and skin lotion more frequently, Davis was not required to seek medical treatment for any heat related ailments. Further, while the summertime heat may have caused Davis to cry and "whine[]" about the heat in 2012, Davis never sought mental counseling from the prison for heat related stress. (Doc. 47, ¶23.) Since "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment" Chandler v. Crosby, 379 F.3d 1278, 1295 (11th Cir. 2004), the complete lack of any objective evidence to indicate that Davis' confinement was anything more than uncomfortable is fatal to this Eighth Amendment claim.

In short, Davis' heat-related claims, the only claims made by Davis in his complaint,[3] simply do not show conditions of such severity and duration that they

---

[3]In his response to this motion for summary judgment, Davis begins attempting to interject new, and different environmental claims into this case. The short answer to this belated attempt to change the fundamental nature of this lawsuit is the familiar principle that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a

denied prisoners "'the minimal civilized measure of life's necessities.'  Hudson, 503

U.S. at 9, 112 S.Ct. 995."  Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000);

Chandler v. Crosby, 379 F.3d 1278, 1294-5 (11th Cir. 2004).   At bottom, the

gravamen of Davis' complaint seems to be an insistence on an air conditioned prison.

However, this contention fails because no court has ever "suggest[ed] that air

conditioning is mandatory to meet the requirements of the Eighth Amendment."

Blackmon v. Garza, 484 F. App'x 866, 872 n. 6 (5th Cir. 2012).   Therefore, the

defendant is entitled to summary judgement on the merits of this Eighth Amendment

claim.   See e.g., Kates v. USP Lewisburg Warden, 547 F. App'x 93 (2013)(heat

related claim, Lewisburg Penitentiary); Mitchell v. Dodrill, 696 F.Supp. 2d. 454, 467

(M.D. Pa. 2010)(same).

---

dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be
amended by the briefs in opposition to a motion to dismiss."  Pennsylvania ex rel.
Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car
Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf.
Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not
consider after-the-fact allegations in determining the sufficiency of [a] complaint
under Rules 9(b) and 12(b)(6).").  Therefore, we will address the plaintiff's claims
as they are set forth in his complaint.  If Davis wishes to bring new and different
claims now, he should do so through a new lawsuit, but he may not change the
fundamental character of this complaint at this late date by arguing new and
different claims in response to this motion for summary judgment.

Further, we find that the defendant is plainly entitled to qualified immunity in this case. Given case law rejecting the notion that inmates are constitutionally entitled to air conditioned cells, nothing about the 2012 institutional response to central Pennsylvania weather conditions at the penitentiary could have alerted these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Quite the contrary, both at the time of these events, and following this episode, these summertime conditions had repeatedly been recognized as insufficient to give rise to constitutional concerns. See e.g., Kates v. USP Lewisburg Warden, 547 F. App'x 93 (2013)(heat related claim, Lewisburg Penitentiary); Mitchell v. Dodrill, 696 F.Supp. 2d. 454, 467 (M.D. Pa. 2010)(same). Since the existing case law provided no fair warning or notice to prison officials that their conduct might transgress clearly established constitutional boundaries, Warden Thomas is entitled to qualified immunity from damages in this case.

## III.   __Recommendation__

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 46.) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of April, 2015.


**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge